UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TVI, INC., <br> d/b/a Savers or Value Village, <br><br> Plaintiff, <br><br> vs. <br><br> INFOSOFT TECHNOLOGIES, INC., <br><br> Defendant. | Case No. 4:06-CV-697 (JCH) |

## MEMORANDUM AND ORDER

The matter is before the Court on Plaintiff's Motion for Partial Summary Judgment on Counts II and IV of TVI's Complaint, filed May 24, 2007. (Doc. No. 24). The matter is fully briefed and ready for a decision.

## BACKGROUND

Plaintiff TVI, Inc., a Washington corporation with its principal place of business in Washington, operates a national chain of thrift stores. (Compl., Doc. No. 1 ¶¶ 2). Defendant Infosoft Technologies, Inc., a Missouri corporation with its principal place of business in Missouri, is a software system developer and distributor of Toshiba computer equipment. (Id. at ¶ 3).

In October 2004, the parties began a business relationship where Plaintiff would purchase computer hardware for its stores from Defendant. (Pl.'s Statement of Uncontroverted Material Facts ("Pl.'s Facts"), Doc. No. 57 ¶ 3). At this time, Defendant also began leasing its computer software programs to Plaintiff. (Compl., Doc. No. 1 ¶ 8). Both parties characterize the business relationship "as comprising separate agreements." (Second Am. Answer & Second Am. Countercl. ("Answer"), Doc. No. 74 ¶ 55). Two agreements are relevant to this motion.

- 1 -

On June 29, 2005, Defendant offered to sell Plaintiff 650 refurbished B-452 Toshiba printers ("Printers") for $325,000, or $500 per printer. (Pl.'s Facts Ex. B, attached Ex. 1 at pg. 11). Each Printer would have a 120 volt power supply, label feed spools, a six month warranty on the print head, and a two year warranty on the printer itself. (Id.). Plaintiff would also receive between one-hundred and two-hundred backup printers at no additional charge. (Id.). The offer stated that "shipping to stores billed separately" and "Printers will be stored at Infosoft Technologies until needed." (Id.). The offer required Plaintiff to respond that day and remit payment by July 15, 2005. (Id.). Plaintiff timely accepted the offer. (Id.).

The parties agree that the June 29, 2005 agreement "was validly issued and binding and supported by consideration." (Def.'s Memo. in Opp'n to Mot. for Summ. J. ("Resp."), Doc. No. 63 ¶ 5). The parties also agree that although the agreement originally contemplated the sale of 650 Printers, Defendant only invoiced 646 Printers. (Id. at ¶ 6).[1] By August 1, 2005, Plaintiff paid Defendants $323,500 for 646 Printers. (Reply Memo. in Supp. of TVI's Mot. for Partial Summ. J. ("Reply"), Doc. No. 69 Ex. A ¶ 19; Id. at Ex. C pg. 2). As of April 28, 2006, Defendant had only delivered twelve Printers to Plaintiff. (Reply Ex. A. ¶ 20).

On December 14, 2005, Plaintiff agreed to buy 99 Toshiba/TEC Model 165 cash registers ("Cash Registers"), and related accessories, from Defendant for $143,281.48. (Pl.'s Facts Ex. A. pg. 9; Reply Ex. A ¶ 23). Defendant sent Sales Order 715 to Plaintiff as a record of this agreement. (Pl.'s Facts Ex. A pg. 9). By December 28, 2005, Plaintiff had paid in full. (Reply Ex. A ¶ 25). On December 30, 2005, Defendant sent Plaintiff a memorandum listing the serial numbers of the Cash Registers Plaintiff had "purchased" and stating that Defendant presently had possession of the Cash

---

[1] There is some confusion about whether the agreed upon amount was 646 or 647 Printers. (Resp ¶ 6; Reply ¶ 19). For purposes of this order, the Court will assume 646 was the agreed upon amount. (Pl.'s Facts Ex. B ¶ 8).

Registers. (Pl.'s Facts Ex. A. pg. 10). As of April 28, 2006, Defendant had delivered thirty-two Cash Registers to Plaintiff. (Id. at ¶ 26).

On March 17, 2006, Brad Jarrett ("Mr. Jarrett"), Defendant's President, notified Plaintiff that it "was done" with Plaintiff. (Pl.'s Facts Ex. A pg. 14). On March 20, 2006, Mr. Jarrett formally notified Plaintiff that Defendant was terminating their business relationship. (Pl.'s Facts Ex. A pg. 8). Defendant terminated the relationship because Plaintiff "purchasing equipment from another company was more than [it was] willing to accept." (Id.).

In April 2006, the parties corresponded about resolving all of their outstanding agreements and accounts. On April 4, 2006, Mr. Jarrett informed Raymond Clawson ("Mr. Clawson"), one of Plaintiff's employees, that it would honor the June 29, 2005 agreement. (Pl.'s Facts Ex. B, attached Ex. 1 at pg. 2). Mr. Clawson then tried to schedule delivery of the Printers because they were "prepaid 100%." (Id.). He stated that Plaintiff wanted to "take possession of [the Printers] in bulk assuming they are completed as outlined in the agreement" and wanted them shipped "at [Defendant's] earliest convenience." (Id.). Mr. Jarrett responded that the Printers would be sent "in palletized bulks of 100 printers per pallet per week" after "all invoices are settled." (Id.).

Mr. Jarrett and Mr. Clawson continued this conversation on April 5, 2006. Mr. Clawson told Mr. Jarrett that, based on the possible shipping costs, Plaintiff may need to take possession of all of the Printers at one time. (Id. at pg. 1). Mr. Jarrett responded that only three quarters of the Printers had been refurbished and all of them still needed to have a new power supply installed. (Id.). Mr. Jarrett stated that shipping one hundred Printers at a time was the best option because preparing all the Printers for shipment at once would take six to eight weeks. (Id.). In an affidavit, Mr. Jarrett claims that after this exchange, Defendant made all of the Printers and Cash Registers available for pick up, but Plaintiff never came to get them. (Resp. Ex. 1 ¶¶ 2-8).

On April 10, 2006, Mr. Jarrett told Plaintiff that if Defendant did not receive payment on all outstanding invoices by April 15, 2006, it would return the Cash Registers to Toshiba and charge Plaintiff for the shipping costs and restocking fees. (Pl.'s Facts Ex. A pg. 15). Bradley Whiting ("Mr. Whiting"), Plaintiff's general counsel, responded to this threat by informing Mr. Jarrett that Plaintiff believed $29,960.69 would reconcile all the balances it owed Defendant. (Id. at 16). Mr. Whiting also stated that Plaintiff would not pay almost $53,000 in additional invoices that Defendant claimed were still outstanding. (Id.). Mr. Whiting requested that Defendant "immediately prepare and deliver (FOB Infosoft warehouses) to our trucking contractor ... seventy-six new Tec 1650 registers." (Id. at pg. 17). He also asked Defendant to prepare a written plan "detailing the delivery schedule for" the Printers by April 21, 2006. (Id.). Finally, he stated that Plaintiff would consider taking legal action if Defendant did not accept these terms by April 18, 2006. (Id.).

Later that day, Mr. Jarrett told Mr. Whiting that Defendant "does not agree to the terms of this letter." (Reply Ex. E pg. 4). Furthermore, Mr. Jarrett stated that Defendant "will be returning all equipment to Toshiba/Tec as of Monday, April 17, 2006." (Id.). On April 15, 2006, Mr. Jarrett emailed Mr. Whiting to inform him that Defendant would return the Cash Registers to Toshiba "in order for [Defendant] to recover the many thousands of dollars owed to us since last year." (Pl.'s Facts pg. 18). On April 24, 2006, Mr. Jarrett sent an email to Plaintiff stating that "we will be returning all equipment to Toshiba/TEC this week. We have waited long enough for payment and [Defendant] needs to reconcile its loss with [Plaintiff]." (Id. at pg. 19). In an affidavit, Mr. Jarrett claims that he made all of the Cash Registers available for pick-up, but Plaintiff never sent anyone to retrieve them. (Resp. Ex. A ¶¶ 7-8). In his deposition, Mr. Jarrett admitted that Defendant never delivered the Cash Registers to the trucking contractor. (Reply Ex. C. pg. 6).

On April 28, 2006, Plaintiff obtained a writ of attachment directing the United States Marshals ("Marshals") to seize the Cash Registers and Printers from Defendant's warehouse. (Pl.'s Facts Ex. B ¶ 17, 24). The Marshals seized 543 Printers and 59 Cash Registers. (Id.). Plaintiff claims that the attached Printers were not adequately refurbished and that the attached Cash Registers were not new. (Id.). Defendant alleges that the Cash Registers were new and that Plaintiff's decision obtain a writ of attachment prevented it from refurbishing 220 Printers. (Resp. ¶ 23, 27).

Plaintiff filed this cause of action on April 28, 2006.[2] (Compl., Doc. No. 1). The Complaint contains the following seven counts: (I) request for injunctive relief; (II) breach of contract, Sales Order 715; (III) breach of contract, Sales Order 472; (IV) breach of contract, the June 29, 2005 agreement; (V) breach of contract, Sales Order 516; (VI) breach of contract, software development agreement; and (VII) conversion. (Id.). Defendant filed a Counterclaim containing twelve claims. (Answer pg. 21-37). The first five counts, which alleged various copyright violations, have been voluntarily dismissed. (Stipulated Voluntary Dismissal with Prejudice, Doc. No. 80). The following counterclaims remain: (VI) suit on account; (VII) unjust enrichment; (VIII) quantum meruit; (IX) breach of contract; (X) anticipatory breach of contract; (XI) breach of implied covenant of good faith and fair dealing; and (XII) breach of supply contract. (Answer pg. 28-37).

Plaintiff filed the present summary judgment motion on May 24, 2007. (Mot. for Partial Summ. J., Doc. No. 54). The motion alleges that Defendant breached Sales Order 715 and the June 29, 2005 agreement. Defendant responds that Plaintiff never fully performed, never requested shipment, and prevented it from performing.[3] (Resp. pg. 8-9).

---

[2]This Court has jurisdiction under 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds the jurisdictional limit.

[3]Defendant also asserts that the Marshal's seizure constituted performance because Plaintiff received the Cash Registers and Printers. (Resp. pg. 9). This argument is without merit and warrants

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. Anderson, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Id. at 249.

---

no further discussion.

As a federal court sitting in diversity, this Court will apply the laws of the State of Missouri. Altru Health Sys. v. Am. Prot. Ins. Co., 238 F.3d 961, 962 (8th Cir. 2001).[4] The Court looks first to decisions of the Missouri Supreme Court. Blum v. Allstate Ins. Co., 296 F. Supp.2d 1037, 1039 (E.D. Mo. 2003). If no relevant decisions are available, the Court will look to Missouri appellate court decisions. Id. The task is "to determine how the Missouri Supreme Court would decide the issue at hand." Id.

## DISCUSSION

### I. Count II: Breach of Sales Order 715

Plaintiff alleges that it is entitled to summary judgment on Count II because the undisputed facts show that Defendant breached Sales Order 715. (Memo. in Supp., Doc. No. 56 pg. 7). Defendant responds that a genuine issue of fact remains regarding whether it fully performed. (Resp. pg. 12). Specifically, Defendant asserts that Plaintiff never came to pick up the Cash Registers even though they were made available to be picked up by Plaintiff's trucking contractor. (Id. at pg. 11). Furthermore, it asserts that this failure to pick up the Cash Registers creates a genuine issue of material fact regarding Plaintiff's damages. (Id.).

In Missouri, to prevail on a breach of contract claim, a plaintiff must prove "the existence of a contract or agreement and the terms of that agreement, that the plaintiff performed or tendered

---

[4]In its brief, Plaintiff cites both Missouri and Washington law. (Memo. in Supp. pg. 8 n. 22). Because the relevant agreements do not state what law governs, the Court looks to Missouri's choice of law rules. See Interstate Cleaning Corp. v. Commercial Underwriters Ins. Co., 325 F.3d 1024, 1028 (8th Cir. 2003). Missouri applies the most "significant relationship test." Am. Country Ins. Co. v. Palumbo, 25 S.W.3d 484, 487 (Mo. Ct. App. 2000). The factors used when determining which state has the most significant relationship to a contract action include: (a) the place of contracting; (b) the place of negotiation; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the residence of the parties. Superior Equip. Co., Inc. v. Maryland Cas. Co., 986 S.W.2d 477, 480 (Mo. Ct. App. 1998). The Court will apply Missouri law because the parties have assumed it applies and the location of the subject matter is in Missouri.

performance, that the defendant did not perform, and that the plaintiff was thereby damaged." Shirley's Realty, Inc. v. Hunt, 160 S.W.3d 804, 807 (Mo. Ct. App. 2005). Additionally, the Uniform Commercial Code ("UCC"), which Missouri has adopted, states that when a sales contract leaves one or more terms open, the contract does not fail for indefiniteness "if the parties intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy." Computer Network, Ltd. v. Purcell Tire & Rubber Co., 747 S.W.2d 669, 674 (Mo. Ct. App. 1988). The UCC supplies the missing terms. Under the UCC, the place of delivery of the goods is "the seller's place of business" and delivery must be made in "a reasonable time." Mo. Rev. Stat. §§ 400.2-308(a), .2-309(1). Furthermore, the seller does not tender delivery until it "gives the buyer any notification reasonably necessary to enable him to take delivery." Id. at § 400.2-503(1). Additionally, a seller must keep the tendered goods available "for the period reasonably necessary for the buyer to take possession." Id. at § 400.2-503(1)(a). Finally, when the contract involves repeated occasions for performance by either party, any "course of performance accepted or acquiesced to without object shall be relevant to determine the meaning of the agreement." Id. at § 400.2-208(1).

Here, the parties agree that Sales Order 715 is a valid contract and that Plaintiff performed (Reply Ex. A ¶ 25). The parties, however, disagree whether Defendant performed. Central to this issue is what terms, if any, were agreed upon by the parties regarding the timing and method of delivering the Cash Registers. The parties' briefs focus on their communications during April 2006. These communications, however, are not helpful because the parties never actually agreed to any terms in those conversations. Additionally, the record contains no information about their course of dealing or performance, except for the general fact that Defendant delivered thirty-two Cash Registers sometime before April 2006. As such, the Court will apply the UCC default rules to Sales Order 715, meaning that Defendant had to tender delivery of the Cash Registers at its place of

business, make the sixty-seven Cash Registers still owed to Plaintiff available to it for a reasonable period of time, and notify Plaintiff of this tender of delivery. Moreover, Defendant had to make this tender of delivery within a reasonable time.

Upon consideration, Defendant breached Sales Order 715 because it failed to tender delivery within a reasonable time. Specifically, it failed to deliver the sixty-seven remaining Cash Registers even though Plaintiff paid for them in December 2005. Moreover, Defendant possessed the Cash Registers at issue in December 2005, meaning it had over four months to tender delivery. (Pl.'s Facts Ex. A. pg. 10). As such, Defendant breached its obligation to deliver the Cash Registers "in a reasonable time" because no reasonable jury could find that this four month delay in delivery, especially in light of its subsequent threats to return the Cash Registers to Toshiba unless Plaintiff paid unrelated invoices, constituted delivery in a reasonable time. See 21 West, Inc. v. Meadowgreen Trails, Inc., 913 S.W.2d 858, 879 (Mo. Ct. App. 1995) (noting that once a party performs on a contract, it has a vested right to performance by the other party in accordance with the contract's terms).

In an affidavit, Mr. Jarrett asserts that Defendant tendered performance because it made the Cash Registers available at its warehouse. (Resp., Ex. A). A party, however, may not use conclusory assertions in an affidavit to create a material issue of fact if the affidavit contradicts sworn statements made in a deposition. See Dotson v. Delta Consol. Indus., Inc., 251 F.3d 780, 781 (8th Cir. 2001). In his deposition, Mr. Jarrett admitted that Defendant would not deliver the Cash Registers until "the invoices [Plaintiff] had outstanding were paid." (Reply Ex. B pg. 6). Furthermore, Mr. Jarrett's emails, which threatened that the Cash Registers would be returned to Toshiba, also undermine an assertion that Defendant tendered delivery. See City of St. Joseph v. Southwestern Bell Tel., 439 F.3d 468, 475 (8th Cir. 2006) (looking to other evidence aside from deposition testimony to support a

finding that an affidavit's conclusory allegations did not create an issue of fact). As such, the Court will ignore this affidavit and finds that Defendant has not offered any specific facts showing that it performed under Sales Order 715.

Finally, the Court must examine the issue of damages. Defendant's breach damaged Plaintiff because it did not receive all of the Cash Registers it purchased. As such, Plaintiff is entitled to recover "benefit of the bargain" damages. See Elsberry v. Boulevard Motors, Inc., 886 S.W.2d 732, 736 (Mo. Ct. App. 1994); see also Hanna v. Darr, 154 S.W.3d 2, 5 (Mo. Ct. App. 2004) (nominal damages are available regardless of actual damages so long as there is proof of a contract and its breach). Genuine fact issues remain, however, about the amount of damages owed to Plaintiff on Count II. Where the only uncertainty is the amount of damages, the granting of summary judgment on the issue of liability is "an appropriate means of avoiding pointless litigation." See Grand Motors, Inc. v. Ford Motor Co., 564 F. Supp. 34, 43 (W.D. Mo. 1982); see also Fed. R. Civ. P. 56(c). As such, partial summary judgment will be granted Plaintiff against Defendant on Count II, in an amount to be subsequently determined by trial of the damages issue.

## II. Count IV

Plaintiff alleges that it is entitled to summary judgment on Count IV because Defendant failed to perform its obligations under the June 29, 2005 agreement. (Mot. for Partial Sum. J., Doc. No. 55). Defendant responds that genuine issues of material fact remain regarding whether Plaintiff fully performed and whether it refused to accept Defendant's tender of delivery. (Resp. pg. 9). Defendant also responds that Plaintiff's actions made it impossible for Defendant to perform. (Id.).

As previously stated, to prevail on a breach of contract claim, a plaintiff must prove "the existence of a contract or agreement and the terms of that agreement, that the plaintiff performed or tendered performance, that the defendant did not perform, and that the plaintiff was thereby

damaged." Hunt, 160 S.W.3d at 807. Additionally, the UCC states that when a sales contract leaves one or more terms open, the contract does not fail for indefiniteness "if the parties intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy." Purcell Tire & Rubber Co., 747 S.W.2d at 674. The UCC supplies the missing terms. Under the UCC, the place of delivery of the goods is "the seller's place of business" and delivery must be made in "a reasonable time." Mo. Rev. Stat. § 400.2-308(a), .2-309(1). Furthermore, the seller does not tender delivery until it "gives the buyer any notification reasonably necessary to enable him to take delivery." Id. at § 400.2-503(1). Additionally, a seller must keep the tendered goods available "for the period reasonably necessary for the buyer to take possession." Id. at § 400.2-503(1)(a). Finally, when the contract involves repeated occasions for performance by either party, any "course of performance accepted or acquiesced to without object shall be relevant to determine the meaning of the agreement." Id. at § 400.2-208(1).

Here, the parties agree that the June 29, 2005 agreement was a valid contract and that Plaintiff performed. (Reply Ex. A ¶ 19). The parties, however, disagree whether Defendant performed. The parties did not agree to any terms regarding the Defendant's delivery of the Printers. Although Defendant previously delivered twelve of the Printers, the parties have not provided the Court with any details about this delivery.

Upon consideration, genuine issues of material fact prevent the entry of summary judgment. Specifically, issues of material fact exist regarding whether the parties intended for Defendant to refurbish the Printers as they were needed by Plaintiff. Fact issues also exist as to whether Defendant could have delivered the Printers "within a reasonable time" if Plaintiff had not attached them. Furthermore, fact issues remain regarding Plaintiff's understanding of Defendant's threats to return

"all equipment" to Toshiba. As such, Plaintiff's motion for summary judgment on Count IV will be denied.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Partial Summary Judgment on Counts II and IV of TVI's Complaint is **GRANTED** in part and **DENIED** in part.

Dated this 13th day of September, 2007.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE