UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TVI, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:06-CV-697 (JCH) |
| ) | |
| INFOSOFT TECHNOLOGIES, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

The matter is before the Court on Plaintiff's Motion for Partial Summary Judgment (Doc. No. 85), filed August 31, 2007. The matter is fully briefed and ready for a decision.

## BACKGROUND

Plaintiff TVI, Inc. operates a national chain of thrift stores. (Compl., Doc. No. 1 at ¶ 2). Defendant Infosoft Technologies, Inc. is a software system developer and distributer of Toshiba computer equipment. (Id. at ¶ 3). In October 2004, the parties began a business relationship where Plaintiff would purchase computer hardware for its stores from Defendant. (Pl.'s Statement of Uncontroverted Material Facts ("Pl.'s Facts"), Doc. No. 87 at ¶ 3). At this time, Defendant also began leasing its computer software programs to Plaintiff. (Compl. at ¶ 8). Both parties characterize the business relationship "as comprising separate agreements." (Second Am. Answer & Second Am. Countercl. ("Second Answer and Counterclaim"), Doc. No. 74 at ¶ 55). The motion before this Court only relates to three purported contracts between the parties.

On April 19, 2005, the parties entered into Sales Order 472, which was an agreement for Plaintiff to purchase Toshiba TEC Model 1650 cash registers from Defendant. (Pl.'s Facts at ¶¶ 5-6;

Resp., Doc. No. 89 at p. 2; Second Answer and Counterclaim at Ex. L)[1]. The parties admit that Sales Order 472 was "a validly issued and binding contract." (Id.). Defendant delivered most of the cash registers as required by the agreement. (Compl. at ¶ 29; Second Answer and Counterclaim at ¶ 25). Plaintiff had paid Defendant a down payment of $16,565.36 on the undelivered cash registers. (Pl.'s Facts at ¶ 6). Defendant never delivered the remaining cash registers or refunded Plaintiff's payment. (Id. at ¶¶ 6-7).

On June 6, 2005, the parties also entered into Sales Order 516, which was an agreement for Plaintiff to purchase Toshiba TEC Model B-452 bar code printers from Defendant. (Pl.'s Facts at ¶¶ 9-10; Second Answer and Counterclaim at Ex. M). The parties agree that Sales Order 516 was a "validly issued and binding contract." (Pl.'s Facts at ¶ 9). Defendant delivered most of the bar code printers as required by the contract. (Compl. at ¶ 25). Plaintiff had paid Defendant a $4,560.00 down payment on the undelivered bar code printers. (Pl.'s Facts at ¶ 10). Defendant, however, neither delivered the remaining printers nor refunded the down payment. (Id. at ¶¶ 11-12). According to Defendant, it did not return the down payments on Sales Order 472 and Sales Order 516 because it credited them to other outstanding invoices that Plaintiff had with it. (Resp. at pp. 4-5).

In 2005, the parties discussed whether they would enter into a requirements contract where Defendant would be Plaintiff's exclusive supplier of equipment for use in the United States. (Pl.'s Facts at Ex. E p. 2). Brad Jarrett ("Mr. Jarrett"), Defendant's President, testified that he and John Leech ("Mr. Leech"), one of Plaintiff's employees, had a verbal agreement that Defendant would be Plaintiff's exclusive supplier in the United States. (Resp. at Ex. 3 p. 141). He also testified that Dave

---

[1] Defendant has admitted all of the facts contained in Plaintiff's Statement of Facts. (Resp., Doc. No. 89).

Miller, another TVI employee, "told" him that "Infosoft would be the exclusive provider of hardware in the U.S." (Id. at p. 144). Defendant also believes that this agreement is evidenced by three emails.

The first email at issue was sent to Mr. Jarrett by Mr. Leech on March 7, 2005. (Id. at Ex. 5). This email, in pertinent part, states:

> Brad--thanks for your understanding and input in this matter. My take on this is that over time we will most likely turn to Infosoft for the majority of our store technology solutions. We also feel that the PCR support and service in Canada has been superb for many years and we want to preserve that relationship. Our decision not to single source from you at this time was multifaceted: as you know, the many elements of our long term systems plan are still being developed/tested; we would like (sic) afford InfoSoft time to focus on the completing (sic) the ticketing application and proving out the data capture solution; we need Tish's strong involvement (sic) input in PLU file design, etc. Generally, we think the depot solution has great merit and we appreciate your thoughtful input on the ultimate solution. I'd envision a scenario where PCR could do substantial configuration work (under InfoSoft coordination and training to mitigate QA issues) on our final solution in Canada. We feel this would provide strong Canadian store support and eliminate problems of trying to make expedient shipments across the border. I would encourage you to work with Tish and TEC in both countries on crafting an operating agreement that is mutually beneficial to all and provides Savers the best possible solution.

(Id.). The next email, sent to Mr. Miller by Mr. Jarrett on March 17, 2005, stated that:

> A few weeks ago you said you were concerned about the production of the 1650 for the next 2 years. I think you said that TEC Canada sent you a response and you were concerned about TEC America not responding. I had TEC America in our offices yesterday and brought this up. They said they would follow through right away.
>
> Just out of curiosity, do you remember what TEC Canada's response was? Also, do you have a projection of the number of terminals needed. The reason I am asking is I am trying to get an idea on the number of terminals needed for the next 2 years. TEC wants to make sure they have the quantity needed and also if I have to purchase them to make sure Savers is covered, I will do so.

(Id. at Ex. 6). The final email, dated December 14, 2005, was sent to Mr. Jarrett from Mr. Miller and states, in pertinent part:

> I'm sorry for the confusion about the register order. Both John and I are going to make a better effort to distinguish between Canadian and U.S. equipment purchases

- 3 -

in the future. Because we desperately need registers in the Canadian stores, we will have to purchase some of the registers from Pacific Cash Register.

(Id. at Ex. 7).

Plaintiff, however, has presented evidence to show that it never agreed to a requirements contract. Plaintiff points to an offer that it received from Pacific Coast Register ("PCR") on February 7, 2005. (Pl.'s Facts at Ex. D). In this offer, PCR implies that Defendant was Plaintiff's exclusive equipment supplier. (Id.). Plaintiff believes that its rejection of this offer shows that no requirements contract existed. Additionally, Mr. Jarrett testified that Mr. Leech told him in a series of emails that Plaintiff did not want an exclusive supplier relationship with Defendant. (Id. at Ex. B pp. 134-35). Moreover, Mr. Jarrett testified that "there's no formal document" showing that a contract existed. (Id. at p. 145). Susan Jarrett, one of Defendant's corporate officers, also testified that there was no formal document. (Id. at Ex. C p. 64). Finally, Mr. Miller testified that Plaintiff never agreed to an exclusive supplier agreement. (Id. at Ex. F p. 51).

Following the demise of the parties' business relationship, Plaintiff filed this cause of action on April 28, 2006.[2] (Compl., Doc. No. 1). The Complaint contains the following seven counts: (I) request for injunctive relief; (II) breach of contract, Sales Order 715[3]; (III) breach of contract, Sales Order 472; (IV) breach of contract, the June 29, 2005 agreement; (V) breach of contract, Sales Order 516; (VI) breach of contract, software development agreement; and (VII) conversion. (Id.). Defendant has filed a twelve count Counterclaim. (Second Answer and Counterclaim at pp. 21-37).

---

[2]This Court has jurisdiction under 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds the jurisdictional limit. Specifically, Plaintiff is a citizen of Washington and Defendant is a citizen of Missouri. (Compl. at ¶¶ 2-3).

[3]On September 13, 2007, the Court granted summary judgment on Count II of the Complaint in an amount subsequently to be determined by trial of the damages issue. (Order of September 13, 2007, Doc. No. 88).

The first five counts, which allege various copyright violations, have been dismissed. (Stipulated Voluntary Dismissal with Prejudice, Doc. No. 80). The following counterclaims remain: (VI) suit on account; (VII) unjust enrichment; (VIII) quantum meruit; (IX) breach of contract; (X) anticipatory breach of contract; (XI) breach of implied covenant of good faith and fair dealing; and (XII) breach of supply contract. (Second Answer and Counterclaim at pg. 28-37).

As previously stated, Plaintiff filed a motion for partial summary judgment on August 31, 2007. (Doc. No. 85). In this motion, Plaintiff asserts that it is entitled to summary judgment on Count III of the Complaint because Defendant breached Sales Order 472. Similarly, it asserts that summary judgment is proper on Count V of the Complaint because Defendant breached Sales Order 516. Finally, Plaintiff asserts that it is entitled to summary judgment on Count XII of the Second Answer and Counterclaim because the purported requirements contract violates the Statute of Frauds. Defendant responds that summary judgment is inappropriate on Counts III and V because its third affirmative defense raises a set-off claim. (Resp. at p. 4). Additionally, Defendant asserts that requirement contracts are exempted from the Statute of Frauds.

## **SUMMARY JUDGMENT STANDARD**

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. Anderson, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Id. at 249.

As a federal court sitting in diversity, this Court will apply the laws of the State of Missouri. Altru Health Sys. v. Am. Prot. Ins. Co., 238 F.3d 961, 962 (8th Cir. 2001).[4] The Court looks first to decisions of the Missouri Supreme Court. Blum v. Allstate Ins. Co., 296 F. Supp.2d 1037, 1039 (E.D. Mo. 2003). If no relevant decisions are available, the Court will look to Missouri appellate court decisions. Id. The task is "to determine how the Missouri Supreme Court would decide the issue at hand." Id.

## DISCUSSION

### I. Count III and Count V

Plaintiff alleges that the undisputed facts show that Defendant breached Sales Order 472 and that it should recover at least $16,565.36, the amount it paid for the undelivered cash registers. (Mot. for Sum. J., Doc. No. 85 at pp. 1-2). Similarly, Plaintiff alleges that the undisputed facts show that

---

[4]The Court previously determined, and the parties do not dispute, that Missouri law applies. (Doc. No. 88).

Defendant breached Sales Order 516 and that it should recover at least $4,560.00, the amount it paid for the undelivered printers. (Id.). Defendant responds that Plaintiff owed it over $65,000 on other invoices and that Plaintiff's failure to pay these invoices entitled it to withhold the down payments. (Resp. at pp. 4-5).

In Missouri, to prevail on a breach of contract claim, a plaintiff must prove "the existence of a contract or agreement and the terms of that agreement, that the plaintiff performed or tendered performance, that the defendant did not perform, and that the plaintiff was thereby damaged." Shirley's Realty, Inc. v. Hunt, 160 S.W.3d 804, 807 (Mo. Ct. App. 2005). Here, it is undisputed that a contract existed, Plaintiff performed, and Defendant failed to perform.

Moreover, it appears that Plaintiff was damaged, as Defendant neither refunded the down payments nor delivered the remaining bar code printers and cash registers. As such, Plaintiff is entitled to recover damages under the Uniform Commercial Code ("UCC"). See Mo. Rev. Stat. § 400.2-701 et. seq..[5] Genuine fact issues remain, however, about the amount of damages owed to Plaintiff on Counts III and V. Where the only uncertainty is the amount of damages, the granting of summary judgment on the issue of liability is "an appropriate means of avoiding pointless litigation." See Grand Motors, Inc. v. Ford Motor Co., 564 F. Supp. 34, 43 (W.D. Mo. 1982); see also Fed. R. Civ. P. 56(c). As such, the entry of partial summary judgment for Plaintiff against Defendant on Counts III and V, in an amount to be subsequently determined by trial of the damages issue, is appropriate.

Defendant, however, asserts that the affirmative defense of set-off prevents the Court from entering summary judgment in Plaintiff's favor. Defendant believes that its third affirmative defense,

---

[5]In its previous order, the Court stated that Plaintiff is entitled to recover "benefit of the bargain" damages. (Order of September 13, 2007, Doc. No. 88). After reviewing this statement, the Court believes that it could be misleading. As such, the Court notes that Counts II-V are all governed by the UCC and its remedies.

which alleges that "Plaintiff's claims for breach of contract are barred in light of Plaintiff's prior material breaches, all pleaded with specificity in Defendant's counterclaims," illustrates its intent to raise set-off as an affirmative defense. Plaintiff agrees that Defendant has pled a set-off claim. Plaintiff, however, asserts that it does not prevent the Court from entering summary judgment because Defendant has raised set-off as a counterclaim.

Generally, a counterclaim is "a cause of action in which a party seeks judgment on his own behalf, while an affirmative defense seeks merely to defeat or avoid the other party's cause of action." In re Estate of Webster, 920 S.W.2d 600, 606 (Mo. Ct. App. 1996); accord Bonded Contracting Co. v. Mehrsheikh, 970 S.W.2d 897, 897 (Mo. Ct. App. 1998). Whether a claim is raised as a counterclaim or an affirmative defense "depends on the intent of the pleader." In re Estate of Webster, 920 S.W.2d at 606.

A set-off claim is generally founded "on a liquidated debt and used to discharge or reduce plaintiff's claim by an opposite claim arising from a transaction extrinsic to the plaintiff's cause of action." Buchweiser v. Estate of Laberer, 695 S.W.2d 125, 129 (Mo. 1985). Missouri case law holds that set-off is generally a counterclaim action. See id.; Brizendine v. Conrad, 71 S.W.3d 587, 593 (Mo. 2002); Sveum v. J. Mess Plumbing, Inc., 965 S.W.2d 924, 926-27 (Mo. Ct. App. 1998); Titan Const. Co. v. Mark Twain Kansas City Bank, 887 S.W.2d 454, 458 n. 1 (Mo. Ct. App. 1994). The Missouri Supreme Court holds that a defendant who pleads set-off "occupies substantially the position of a plaintiff and must have a subsisting demand which would afford the subject matter for a cause of action." See Buchweiser, 695 S.W.2d at 129. It also notes that "setoff or counterclaim has the nature and effect of an independent action by the defendant against the plaintiff." Id. A trial court errs in awarding a setoff "in the absence of a demand and pleading to recover a setoff." See Sveum, 965 S.W.2d at 927.

Some Missouri case law implicitly recognizes set-off as an affirmative defense. See Brizendine, 71 S.W.3d at 593 (noting that Bank of Kirksville v. Small, 742 S.W.2d 127 (Mo. 1985) and Reynolds County Mem'l Hosp. v. Sun Bank of Am., 974 S.W.2d 663 (Mo. Ct. App. 1998) have recognized set-off as an affirmative defense). Small, the case usually relied upon to hold that set-off is an affirmative defense, never actually held that set-off is available as an affirmative defense. Rather, Small merely noted that the defendant had raised set-off as a defense, but had abandoned it at trial. 742 S.W.2d at 131. Small also noted in dicta that the trial court would have had to deny this claim because insufficient evidence existed to support a set-off claim. Id. In Sun Bank of America, the court held that since defendant had not pled set-off as an affirmative defense, it would interpret the set-off argument as attacking one of the necessary elements of plaintiff's claim. 974 S.W.2d at 667.

Upon consideration, the Court finds that Defendant has raised set-off as a counterclaim. First, the Second Answer and Counterclaim clearly shows an intent by Defendant to plead set-off as a counterclaim because, read as a whole, it clearly tries to raise a "cause of action in which a party seeks judgment on [its] own behalf." In re Estate of Webster, 920 S.W.2d at 606. If Plaintiff meant to plead set-off as an affirmative defense, it would have discussed the contracts to be set-off in detail in its affirmative defenses instead of alleging five distinct counts regarding these contracts in its Second Answer and Counterclaim. Additionally, the language of the third affirmative defense does not actually allege that Defendant is entitled to set-off. Rather, this language alleges that Defendant's performance was excused by Plaintiff's breach of the contracts at issue. See Mo. Rev. Stat. § 400.2-703 (seller may withhold goods when buyer fails to make a payment). Moreover, Defendant's actions throughout this litigation do not suggest that it raised a set-off claim solely to avoid Plaintiff's cause of action. Finally, the set-off allegations in this case do not resemble the few cases where set-off is

construed as an affirmative defense. Thus, the Court finds that Defendant has raised a counterclaim for set-off.

The Court now reaches the question of whether a set-off counterclaim can prevent the entry of summary judgment on a breach of contract action. Federal courts routinely hold that the existence of a set-off counterclaim does not prevent the entry of summary judgment on a breach of contract claim. See in re Aetna Indus., 340 B.R. 252, 262-64 (Bankr. Del. 2006) (collecting extensive authority to support this proposition); accord Dubied Mach. Co. v. Vermont Knitting Co., 739 F. Supp. 867, 872 (S.D.N.Y. 1990); Electro-Catheter Corp. v. Surgical Specialities Instrument Co., 587 F. Supp. 1446 (D. N.J. 1984). Here, the Court has already determined that the only material fact at issue in both Counts III and V is the amount of damages. As such, the Court will grant Plaintiff a partial summary judgment on Counts III and V, in an amount subsequently to be determined by trial of the damages issue.

## II. Counterclaim XII

Plaintiff contends that Count XII of the Second Answer and Counterclaim fails because Defendant cannot show that a requirements contract ever formed. (Memo. in Supp., Doc. No. 86 at p. 9). Defendant asserts that there is ample evidence of a contract forming.

A requirements contract is "one in which the party promises to supply all the specific goods or services which the other party may need during a certain period at an agreed upon price, and the other party promises that he will obtain his required goods or services from the first party exclusively." Esso Geometric v. Harvard Indus., 46 F.3d 718, 722 (8th Cir. 1995). A valid sales contract, such as a requirements contract, includes three basic elements: offer, acceptance, and consideration. Luebbert v. Simmons, 98 S.W.3d 72, 77 (Mo. Ct. App. 2003). In order to have a contract, there must be "a definite offer and an unequivocal acceptance." Tinucci v. R.V. Evans Co.,

989 S.W.2d 181, 184 (Mo. Ct. App. 1998). The meeting of the minds necessary for the formation of a contract "may not be found or determined on the undisclosed assumption or secret surmise of either party but must be gathered from the intention of the parties as expressed or manifested by their words or acts." Silver Dollar City, Inc. v. Kitsmiller Const. Co., 931 S.W.2d 909, 913-14 (Mo. Ct. App. 1996). This objective intent is determined using the standard of "what a reasonably prudent person would be led to believe from the actions and words of the parties." Computer Network, Ltd. v. Purcell Tire & Rubber Co., 747 S.W.2d 669, 673 (Mo. Ct. App. 1988). The intention of the parties is a "question to be resolved by the trier of fact." Silver Dollar City, Inc., 913 S.W.2d at 914.

Upon consideration, genuine issues of material fact prevent the Court from determining whether a contract formed. Specifically, Mr. Jarrett testified that he and Mr. Miller agreed to a requirements contract. (Resp. at Ex. 3 p. 144). Conversely, Mr. Miller testified that Plaintiff never agreed to a requirements contract. (Pl.'s Facts at Ex. F p. 51). When faced with conflicting testimony, summary judgment is inappropriate because it requires the Court to make a credibility determination. As such, the Court will not grant Plaintiff summary judgment on this basis.

Plaintiff also asserts that the purported requirements contract is unenforceable because it does not satisfy the Statute of Frauds. (Memo. in Supp. at p. 10). Defendant asserts that oral requirements contracts are exempted from the Statute of Frauds. (Resp. at p. 7). It also asserts that Plaintiff misrepresents the scope of the purported requirements contract because it only encompassed the equipment for use in the United States, not the equipment for use in the United States and Canada. Finally, Defendant asserts that the emails it has produced memorialize the purported oral requirements contract.

The Statute of Frauds, as contained in Missouri's adoption of the UCC, requires:

> (1) Except as otherwise provided in this section a contract for the sale of goods for the price of five hundred dollars or more is not enforceable by way of action or

> defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

Mo. Rev. Stat. § 400.2-201(1). Requirement contracts for the sale of goods are not excepted from the Statute of Frauds. See Toghiyany v. Amerigas Propane, Inc., 309 F.3d 1088, 1092 (8th Cir. 2002) (stating "we have not found any Missouri law exempting requirement contracts from the general requirements of the statute of frauds."). Other jurisdictions interpreting the UCC agree that requirements contracts are not excepted from the statute of frauds. See Propulsion Techs., Inc. v. Attwood Corp., 369 F.3d 896, 904 (5th Cir. 2004) (applying UCC Statute of Frauds to requirements contract); O'Sullivan Corp. v. Dura-Last, Inc., 7 Fed. Appx. 509, 514 (6th Cir. 2001); E. Dental Corp. v. Isaac Masel Co., 502 F. Supp. 1354, 1363 (E.D. Pa. 1980).

Defendant, however, contends that Esso Geometric v. Harvard Indus., 46 F.3d 718 (8th Cir. 1995), and Universal Power Sys., Inc. v. Godfather's Pizza, Inc., 818 F.2d 667 (8th Cir. 1987), both hold than an oral requirements contract is enforceable. (Resp. at p. 7). Defendant misreads these cases. In both, the Eighth Circuit was not examining whether an oral requirements contract was enforceable without a writing. Rather, the issue was whether the writings at issue satisfied the Statute of Frauds. See Esso Geometric, 46 F.3d at 728-29 (applying Missouri law); Godfather's Pizza, Inc., 818 F.2d at 670-71 (applying Missouri law). Thus, the Court finds that a requirements contract must satisfy the Statute of Frauds.

To satisfy the Statute of Frauds, a writing need not be the actual contract. Rather, a memorandum of the contract is acceptable. Vess Beverages, Inc. v. Paddington Corp., 941 F.2d 651, 654 (8th Cir. 1991) (applying Missouri law). Moreover, the memorandum can be comprised of more than one document. Id. Only one document needs to be signed, so long as "one documents refers to

another, or their contents clearly show they are related." Id. (citing Mayer v. King Cola Mid.-Am., Inc., 660 S.W.2d 746, 748 (Mo. Ct. App. 1983)). A signature may appear anywhere in the document and may be typed, printed, or stamped. Id.

The Statute of Frauds also requires that the writings must be "sufficient to indicate" that a contract was formed. Mo. Rev. Stat. § 400.2-201. A Missouri court has explained "if it is more probable than not that the writing evidences a deal between the parties, then the writing should be found sufficient."Howard Const. Co. v. Jeff-Cole Quarries, Inc., 669 S.W.2d 221, 227 (Mo. Ct. App. 1983). This court also alternatively applied a more liberal standard that the "terms of the writing must allow for the inference that an agreement had been reached between the parties." Id. (citing Harry Rubin & Sons, Inc. v. Consol. Pipe Co. of Am.,153 A.2d 472, 476 (Pa. 1959) and Perdue Farm, Inc. v. Motts, Inc. of Miss., 459 F. Supp. 7, 17 (N.D. Miss. 1978)).

Two other rules are relevant to this issue. First, the formation of a contract does not require that "all terms be settled. One or more terms may be left open and the contract will not fail for indefiniteness; but the parties must intend to make a contract." Computer Network, Ltd., 747 S.W.2d at 674; see Mo. Rev. Stat. § 400.2-204(3) (stating that a contract for the sale of goods "does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy."). Second, Missouri law instructs:

> [A] Court must consider whether there is a writing sufficient to satisfy the Statute of Frauds *before* it allows proof of the existence and terms of an oral contract. Therefore, testimony or circumstantial evidence that a contract was made, no matter how convincing, is simply irrelevant to whether the writing itself evidences an agreement. In other words, one cannot bootstrap a skimpy writing into an adequate one with oral evidence.

Vess Beverages, 941 F.2d at 655 n. 6 (citations omitted and emphasis in original).

Upon consideration, the writings at issue do not satisfy the Statute of Frauds. The March 7, 2005 email from Mr. Leech to Mr. Jarrett states that Plaintiff "will not single source from" Defendant

- 13 -

at this time. (Resp. at Ex. 5). In fact, it is unclear if the email is even related to hardware equipment, or something else. (Id.). The email does state that "over time, [Plaintiff] will most likely turn to Infosoft for the majority of our store technology solutions." (Id.). This statement neither promises exclusivity nor in any way confirms an agreement to supply all of Plaintiff's hardware needs. The March 17, 2005 email from Mr. Jarrett appears to be an inquiry as opposed to the memorialization of a contract. (Id. at Ex. 6). The December 14, 2005 email sent by Mr. Miller to Mr. Jarrett merely discusses confusion about a register order, acknowledges a failure to distinguish between Canadian and United States equipment orders, and informs Mr. Jarrett that Plaintiff will buy some registers for PCR. (Id. at Ex. 7). In sum, the Court finds that these emails, even when read together, do not make it "more probable than not" that a contract formed. In fact, the Court does not believe that these two emails create an "inference" of a requirements contract being formed. As such, the Court will grant summary judgment on this counterclaim.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Doc. No. 85) is **GRANTED** on Count III and Count V of Plaintiff's Complaint in an amount subsequently to be determined by trial of the damages issue.

**IT IS FURTHER ORDERED** that Count XII of Defendant's Second Amended Answer and Counterclaim is **DISMISSED**.

Dated this 15th day of November, 2007.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE